IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAY REYNOLDS,<br><br>   Plaintiff,<br><br>v.<br><br>HEARST COMMUNICATIONS, INC.,<br><br>   Defendant. | C.A. No. 1:17-cv-06720 (DLC) |

**DECLARATION OF JENNIFER D. BISHOP
IN SUPPORT OF DEFENDANT'S MOTION FOR A BOND
AS SECURITY FOR COSTS AND FEES UNDER LOCAL CIVIL RULE 54.2**

I, JENNIFER D. BISHOP, declare, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. My name is Jennifer D. Bishop, and I am over the age of 18 and fully competent to make this Declaration. I am an attorney admitted to practice before this Court. I am employed as Counsel to the Hearst Corporation, in the Office of the General Counsel, and an attorney for Defendant Hearst Communications, Inc. ("Hearst"). I make this Declaration in support of Hearst's Motion for a Bond as Security for Costs and Fees Under Local Civil Rule 54.2 (the "Motion"). I have personal knowledge of the matters stated in this Declaration, and each statement is true and correct.

**Facts Relevant to the Motion.**

2. On September 4, 2017, Plaintiff filed this litigation alleging that Hearst infringed his copyright by publishing a photograph of Melania Trump (the "Photograph") as part of an article on elle.com (the "Article").

3. To my knowledge, neither Plaintiff nor his counsel contacted Hearst about the

Photograph or the Article prior to filing suit.

4. With the exception of making an initial settlement demand during a conversation with me about a different lawsuit, neither Plaintiff nor his counsel contacted Hearst about this litigation at any point after filing it until after I emailed Plaintiff's counsel (Richard Liebowitz) on November 28, 2017, to remind him of his Rule 26 obligations.

5. The initial pretrial conference in this matter was originally scheduled for December 1, 2017. I appeared on that date along with Hearst's principal trial counsel, Jonathan Donnellan. Mr. Liebowitz did not appear on that date, and the Court adjourned the conference to December 9, 2017.

6. At the rescheduled initial pretrial conference on December 9, 2017, I provided the Court and Mr. Liebowitz with information about how Hearst obtained the Photograph, including that Hearst was provided with the Photograph by representatives of Melania Trump and/or the Trump Organization.

7. During the December 9 conference, Mr. Liebowitz stated in substance that he was aware that Plaintiff had authorized the Trump Organization to use the Photograph. Upon questioning from the Court, Mr. Liebowitz initially stated that the Trump Organization was authorized to use the Photograph for "anything," and then stated that the authorization was for anything related to the Trump campaign. Upon further questioning, Mr. Liebowitz suggested that an authorized campaign-related use of the Photograph would be a use on a campaign website.

8. Also during the initial pretrial conference, counsel and the Court discussed the possibility of Plaintiff being required to post a bond as security under Local Civil Rule 54.2. During that discussion, Mr. Liebowitz stated in substance that Plaintiff has little assets and a

bond requirement may impact his ability to pursue this litigation.

9.      Attached hereto as Exhibit 1 is a true and correct copy of a LinkedIn profile for an individual named Ray Reynolds, described as the "Owner at RAYzor's Edge Photography L.L.C." and located in Collinsville, Virginia.  Upon information and belief, Exhibit 1 is the LinkedIn profile of the same Ray Reynolds that is the Plaintiff in this action.  Notably, Plaintiff has alleged in this action that the Photograph is registered under U.S. Copyright Registration No. VAu 1-239-928 (*see* Compl. ¶ 9), and the Copyright Office's Public Catalog records for that registration reflect that the registrant is "Ray Paige Reynolds" of "Rayzors Edge Photography" at "65 Printers Lane, Collinsville, VA."  A true and correct copy of the Copyright Office's Public Catalog records for Registration No. VAu 1-239-928 is attached hereto as Exhibit 2.

**The Reasonable Costs and Attorneys' Fees Hearst Is Likely to Incur in this Matter.**

10.     By the Motion, Hearst seeks an order requiring Plaintiff to post a $105,000 bond as security for the costs and attorneys' fees Hearst may recover if it prevails in this action.  As set forth and supported in the following paragraphs, the costs and fees Hearst may be entitled to recover are likely to total an amount substantially greater than $106,650, including more than $102,750 in attorneys' fees and more than $3900 in costs.

11.     Hearst currently plans on relying entirely on the Hearst Corporation's specialized in-house legal department, known as the Hearst Office of General Counsel ("Hearst OGC"), to handle this case.  Hearst OGC operates as a full-service in-house boutique law firm with a national practice, and directly represents Hearst subsidiaries in a wide range of litigations, as well as transactional and regulatory matters.  It is responsible for all legal matters involving Hearst's media interests, which include magazines, Internet businesses, newspaper and business publishing, newspaper features distribution, cable networks, television and radio broadcasting,

television production and distribution, and real estate.

12. Hearst OGC has a particular expertise in the area of media law litigation, including copyright and trademark cases. Hearst Vice President and Deputy General Counsel Jonathan Donnellan leads Hearst OGC's litigation practice group, which handles all litigation, newsroom counsel, and content-related matters for the company (including this case). Mr. Donnellan regularly serves as lead counsel for Hearst in state and federal trial and appeals courts around the country and has over 25 years of experience representing media clients in intellectual property and other content-related actions. Recently, for example, Mr. Donnellan was lead counsel for Hearst OGC in *Kelly-Brown v. Winfrey*, 659 F. App'x 55 (2d Cir. Sept. 16, 2016) (affirming summary judgment in favor of Hearst and codefendants on trademark claim involving, *inter alia*, use of a phrase on the cover of a magazine). In addition to his media law practice, Mr. Donnellan has been a law school professor on the topic since 2006, as well as a member of the faculty of the Practicing Law Institute for its annual program on Communications Law in the Digital Age. Before joining Hearst in 2003, Mr. Donnellan was Vice President and Deputy General Counsel for the New York Daily News from 2002 to 2003 and Assistant General Counsel for CNN from 2001 to 2002. Previously, he practiced from 1991 to 2001 at the firm Cahill Gordon & Reindel in New York City, where he focused primarily on the representation of media clients. He is a frequent speaker around the country and internationally on legal and ethical issues relating to media law and the First Amendment, and has published articles and book excerpts on those topics. Mr. Donnellan received his J.D. from the New York University School of Law in 1991. He has served as chair of the New York City Bar Association's Committee on Communications Law, co-chair of the ABA's First Amendment Litigation Committee, a member of the Governing Committee of the ABA's Forum on Communications

Law, and as a Trustee of the Media Law Resource Center Institute.

13. In addition to Mr. Donnellan, this case is staffed by my colleague Ravi Sitwala and myself, and the three of us work together regularly on Hearst's copyright litigation matters. As Senior Counsel for Hearst, and an attorney with the Hearst OGC for ten years, Mr. Sitwala has significant experience involving intellectual property matters and has appeared numerous times on behalf of Hearst in matters before state and federal trial and appeals courts. Mr. Sitwala received his J.D. from New York University School of Law in 2004. After graduating from law school and prior to joining Hearst OGC, he clerked for Judge Fuentes on the United States Court of Appeals for the Third Circuit, and was a litigation associate at Patterson Belknap Webb & Tyler LLP with a focus on litigating intellectual property and media cases.

14. As Counsel for Hearst for over two years, I also have significant experience litigating cases involving copyright and other media law issues and have appeared numerous times on behalf of Hearst in matters before state and federal trial and appeals courts. Prior to joining Hearst OGC in 2015, I was a litigation associate at Quinn Emanuel Urquhart & Sullivan, LLP, where I focused on media and intellectual property litigation. I received my J.D. from the Yale Law School in 2012.

15. Mr. Donnellan, Mr. Sitwala, and I currently anticipate spending significantly more than 165 collective hours litigating this case through summary judgment. The following chart summarizes the conservative *minimum* number of hours of legal work that we anticipate spending on this case, assuming that neither party discloses any expert testimony, and *excluding* the time we have spent to date on this matter (including in connection with this Motion and the initial pretrial conference), our internal investigation and fact-gathering, and the time that has been and will be expended by our senior paralegal:

| Task | J. Donnellan | R. Sitwala | J. Bishop |
|---|---|---|---|
| Document discovery (including drafting discovery requests, responding and objecting to Plaintiff's discovery requests, collecting and producing documents, reviewing Plaintiff's production, and potential discovery disputes with Plaintiff). | 1.0 hours | 10.0 hours | 25.0 hours |
| Preparing for and taking Plaintiff's deposition | 1.0 hours | 7.00 hours | 15.00 hours |
| Preparing two witnesses to be deposed by Plaintiff's counsel and defending their depositions. | 0.0 hours | 5.00 hours | 10.00 hours |
| Taking third party discovery, including two potential depositions. | 0.0 hours | 10.00 hours | 15.00 hours |
| Researching and drafting Hearst's summary judgment briefing. | 4.0 hours | 10.00 hours | 30.00 hours |
| Preparing for and presenting oral argument on Hearst's summary judgment motion. | 10.00 hours | 6.00 hours | 6.00 hours |
| **TOTAL** | 16.00 hours | 48.0 hours | 101.0 hours |

Because (1) this chart reflects very conservative minimum estimates of task time, (2) not all litigation tasks are reflected in the chart, and (3) we expect that expert testimony may be necessary, we anticipate that the actual number of hours we spend on this case will be significantly greater than the amount reflected in the chart. If Hearst prevails, Hearst reserves its right to seek recovery for the total fees it incurs in defending against this matter, including fees for hours and tasks (including expert-related tasks) that are not set forth on the foregoing chart.

16.    As in-house counsel, Mr. Donnellan, Mr. Sitwala, and myself do not regularly charge hourly rates to Hearst. Accordingly, consistent with the holdings of judicial decisions that have awarded fees for the time spent by in-house counsel, I have calculated Hearst's likely incurred attorneys' fees in this matter by looking to the hourly rates of outside counsel with experience and expertise comparable to that of myself and my colleagues. For instance, in the recent copyright case *Mahan v. Roc Nation, LLC*, No. 14-cv-5075, 2016 WL 4718018, at *2 (S.D.N.Y. Sept. 9, 2016), the court deemed hourly rates of $855 for an experienced partner and

up to $553 for associates to be reasonable. *See also Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC*, No. 13-cv-2493, 2014 WL 4792082, at *2 (S.D.N.Y. Sept. 24, 2014) ("In recent years, New York district courts have approved rates for experienced law firm partners in the range of $500 to $800 per hour."); *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 56 (S.D.N.Y. 2015) (finding a $461 per hour rate to be reasonable for a second-year associate); Karen Sloan, *$1,000 Per Hour Isn't Rare Anymore; Nominal billing levels rise, but discounts ease*, The National Law Journal, Jan. 13, 2014, at 2 ("Firms with their largest office in New York had the highest *average* partner and associate billing rates, at $882 and $520, respectively," with a realization rate of 83.5 percent.) (emphasis added).

17. Based on our qualifications and experience and the rates approved by courts for outside counsel in other cases, Hearst has determined that an hourly rate of $850 for Mr. Donnellan, $700 for Mr. Sitwala, and $550 for myself is reasonable.

18. Using the reasonable hourly rates set forth in Paragraph 17, if the Hearst attorneys were to work on this case for *only* the minimal hours detailed in Paragraph 15, Hearst would incur $102,700 in fees, as summarized in the following chart:

| Professional | Total Hours | Billing Rate | Amount |
|---|---|---|---|
| J. Donnellan | 16.0 | $850 | $13,600 |
| R. Sitwala | 48.0 | $700 | $33,600 |
| J. Bishop | 101.0 | $550 | $55,550 |
| **TOTAL** | **165.00** | | **$102,750** |

19. Again, because the Hearst attorneys will likely spend far more hours on this case than the 165 hours detailed in Paragraph 15, the total amount of recoverable attorneys' fees that Hearst is likely to incur in this action (and may later seek to recover) will significantly exceed $102,700.

20.     In addition to its attorneys' fees, Hearst will incur reasonable costs in defending against this litigation, and those costs are likely to substantially exceed $3900.

21.     Hearst currently anticipates taking the videotaped deposition of Plaintiff as well as two videotaped depositions of third-party witnesses associated with Hiltzik Strategies and/or the Trump Organization in connection with its license defense.  Hearst recently deposed another copyright infringement plaintiff represented by Mr. Liebowitz at a total estimated cost of $1300 (exclusive of travel costs).[1]  Hearst anticipates that its deposition of Plaintiff will cost at least as much, and its third party depositions may be more costly due to travel.  Accordingly, Hearst estimates that its deposition costs alone will exceed $3900, and Hearst's total recoverable costs (such as printing and copying and potential expert fees) will be substantially greater.  As with its attorneys' fees, Hearst reserves its right to later seek recovery for the total costs it incurs in defending against this matter, including expert witness fees.

**Relevant Authority Cited in the Motion.**

22.     Attached hereto as Exhibit 3 is a true and correct copy of the Order to Show Cause issued by U.S. District Judge Analisa Torres on November 14, 2017, in the matter of *Reynolds v. Intermarkets, Inc.*, No. 1:17-cv-08795 (AT) (S.D.N.Y.).

Executed this 15th day of December, 2017, in New York, New York.

/s/ Jennifer D. Bishop
JENNIFER D. BISHOP

---

[1] Hearst has not yet been billed for the final total cost of this deposition, but Hearst's court reporting service, TSG Reporting, Inc., represented to Hearst that the estimated total is $1300.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on December 15, 2017.

                                            /s/ Jennifer D. Bishop
                                            Jennifer D. Bishop